JUDGE SWEET

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

07 CV 10588

| | |
|---|---|
| PYRAMID HOLDINGS, INC., Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) ) | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| vs. ) ) | |
| GIANT INTERACTIVE GROUP, INC., MERRILL LYNCH & CO. and UBS INVESTMENT BANK, ) ) ) ) | |
| Defendants. ) ) | |

RECEIVED
NOV 26 2007
U.S.D.C. S.D.N.Y.
CASHIERS

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel (which investigation included analysis of publicly available news articles and reports, public filings, securities analysts' reports and advisories about Giant Interactive Group, Inc. ("Giant Interactive" or the "Company"), press releases and other public statements issued by the Company, and media reports about the Company) and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased the American Depositary Shares ("ADSs") of Giant Interactive pursuant and/or traceable to the Company's initial public offering on or about November 1, 2007 through November 19, 2007, seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"). This action concerns the initial public offering of Giant Interactive ADSs which took place on or about November 1, 2007 (the "IPO" or the "Offering").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§77k, 77l(a)(2) and 77o].

3. This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

4. Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District and the IPO was marketed in this District.

5. In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the New York Stock Exchange ("NYSE").

## PARTIES

6. Plaintiff Pyramid Holdings Inc. purchased Giant Interactive ADSs, as set forth in the certification attached hereto and incorporated herein by reference, pursuant and/or traceable to the Company's IPO, and was damaged thereby.

7. Defendant Giant Interactive develops and operates online games in the People's Republic of China. The company was founded in 2004 and is based in Shanghai, the People's Republic of China.

8. Defendants UBS Investment Bank ("UBS") and Merrill Lynch & Co. ("Merrill Lynch") served as the lead underwriters for the IPO. UBS maintains its principal United States offices in this District and Merrill Lynch's executive offices are in this District. UBS and Merrill Lynch failed to perform adequate due diligence in connection with their role as underwriters for the IPO and were negligent in failing to ensure that the Registration Statement and Prospectus were prepared properly and accurately.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

9. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of itself and all persons other than defendants who purchased the ADSs of Giant Interactive pursuant and/or traceable to the Company's IPO. Excluded from the Class are defendants herein, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

10.  The members of the Class are so numerous that joinder of all members is impracticable. Giant Interactive sold more than 65 million ADSs in the IPO. The precise number of Class members is unknown to plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Giant Interactive or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

11.  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

12.  Plaintiff's claims are typical of the claims of the other members of the Class because plaintiff's and all the class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

13.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

14. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) Whether the prospectus and registration statement issued by defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts about Giant Interactive and its business; and

(c) The extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

15. Defendant Giant Interactive develops and operates online games in the People's Republic of China. The Company's primary game is ZT Online which is a free-to-play massive multi-player online ("MMO") game.

16. On or about October 31, 2007, Giant Interactive filed with the Securities and Exchange Commission ("SEC") a Form F-1/A Registration Statement (the "Registration Statement"), for the IPO.

17. On or about November 1, 2007, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, became effective and, including the exercise of the over-allotment, more than 57 million shares of Giant Interactive's ADSs at $15.50 per ADS were sold to the public, thereby raising more than $886 million. Shortly thereafter, the Company announced that the underwriters had exercised their over-allotment option and purchased and sold an additional 8.6 million ADSs at $15.50 per ADS.

18. The Registration Statement and Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

19. The Registration Statement positively described the Company's "strong" growth in paying players and average revenues per user ("ARPU") stating in pertinent part as follows:

> We believe that the high playability, interactivity and community-oriented nature of our games, together with their large active player bases, have resulted in a strong growth in the number of our paying players and our average revenues per user, or ARPU. As a result, ZT Online's quarterly active paying players and ARPU achieved compound quarterly growth rates of 54.2% and 28.6%, respectively, from the quarter ended March 31, 2006 through the quarter ended June 30, 2007. ZT Online had 143,110 and 1,247,791 quarterly active paying players in the quarters ended March 31, 2006 and June 30, 2007, respectively. In the three months ended September 30, 2007, ZT Online had 1,317,673 quarterly active paying players. ZT Online had ARPU of RMB84 and RMB320 in the quarters ended March 31, 2006 and March 31, 2007, respectively. In the quarter ended June 30, 2007, ZT Online's ARPU decreased to RMB295.

20. The Registration Statement also positively described ZT Online stating in pertinent part as follows:

> We are a leading developer and operator of online games in China as measured by revenues. According to IDC, we were ranked as the fifth largest online game company in China in terms of revenues in 2006. Since its commercial launch in 2006, ZT Online has become the most popular online game in China according to IDC. ZT Online's popularity has enabled us to attract a large player base, which we believe enriches players' interactive game experience and stimulates the purchase of virtual products and services by our players. ZT Online achieved quarterly peak concurrent users of 755,438, quarterly average concurrent users of 395,397 and quarterly active paying players of 786,532 within the first year of its commercial launch. In the quarter ended June 30, 2007, ZT Online had achieved quarterly peak concurrent users of 1,072,595, quarterly average concurrent users of 515,178 and quarterly active paying players of 1,247,791.

21. The statements referenced above in ¶¶19 and 20 were inaccurate statements of material fact because they failed to disclose that the Company had experienced a decline in average concurrent users ("ACU") and peak concurrent users ("PCU") for the third quarter of 2007 due to a significant rule change for ZT Online. Specifically, prior to the IPO, Giant Interactive had

implemented a rule change to discourage "gold farming activities" in ZT Online. Gold farming is generally conducted by companies that hire people to play online games so that they can generate online currency which is then sold on third-party websites for real cash. Due to the rule change, Giant Interactive was experiencing a decline in ACU and PCU. Although the Registration Statement contained the ACU and PCU figures for the quarter ended September 30, 2007, it did not explain or describe the rule change in any meaningful fashion, did not highlight the negative trend in ACU and PCU and did not disclose the negative impact that the rule change was having at the time of the IPO.

22. The Registration Statement described the gold coin currency system in ZT Online and alluded to the Company's efforts to "restrict" the ability of players to sell their gold coins but failed to disclose that the Company had changed the rules to restrict gold farming. The Registration Statement stated in pertinent part as follows:

> Unlike many other MMO games currently operated in China, ZT Online is free of charge to play. Players may purchase physical or virtual prepaid game cards and game points on our official game website or from Internet cafés and other distribution points which allow their characters to obtain "gold coins," one of the currencies used in the ZT Online game. Players may also earn "silver coins" for their characters when they successfully fulfill tasks or adventures in the game world. The game also has "gold coin vouchers," which are offered both as a salary to players who meet certain requirements and as a reward in connection with certain of our promotions. Gold coin vouchers are not exchangeable for gold coins or silver coins, and can only be used by players to purchase certain specified and non-transferable virtual products and services. Players may trade silver coins for gold coins, and vice-versa, inside the game. Neither gold coins, gold coin vouchers, nor silver coins may be used by players to purchase any products or services outside of the ZT Online game. However, certain players make use of third party auction websites to sell their game accounts, which may include gold coins, gold coin vouchers and silver coins, for real money. See "Risk Factors-Risks Relating to Our Business and Industry-Some of our players make sales and purchases of ZT Online game accounts and virtual products through third party auction websites, which may have a negative effect on our net revenues; efforts by us to restrict these transactions has resulted, and may continue to result, in players deciding not to play our games or making legal claims against us, which could materially and adversely affect our business, results of operations and financial condition.

23. Under applicable SEC rules and regulations governing the preparation of the Registration Statement and Prospectus, the Registration Statement was required to disclose that the Company had materially changed the rules to ZT Online and that the rule change was then impacting the Company's continuing operations. The Registration Statement failed to contain any such disclosure.

24. On November 19, 2007, after the close of the market, Giant Interactive issued a press release announcing its financial results for the third quarter of 2007, the period ending September 30, 2007. Among other things, the Company reported that ACU for the third quarter was 481,000, a decrease of 6% from the second quarter of 2007 and that PCU for the third quarter was 888,000, a decrease of 17.2% from the second quarter of 2007.

25. On November 20, 2007, before the market opened, Giant Interactive held a conference call with analysts and investors to review the Company's earnings release. During the conference call, Giant Interactive attributed the decline in the third quarter ACU and PCU figures to a rule change to ZT Online that was implemented to discourage gold farming activity.

26. Following the Company's earnings release and conference call, on November 20, 2007, the price of Giant Interactive ADSs dropped from $14.88 per ADS to $11.10 per ADS on extremely heavy trading volume.

## COUNT I

### Violations of Section 11 of the Securities Act
### Against All Defendants

27. Plaintiff repeats and realleges each and every allegation contained above.

28. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

29. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

30. Giant Interactive is the registrant for the IPO. The defendants named herein were responsible for the contents and dissemination of the Registration Statement and the Prospectus.

31. As issuer of the ADSs, Giant Interactive is strictly liable to Plaintiff and the Class for the misstatements and omissions.

32. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

33. By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

34. Plaintiff acquired Giant Interactive ADSs pursuant to the Registration Statement.

35. Plaintiff and the Class have sustained damages. The value of Giant Interactive ADSs has declined substantially subsequent to and due to Defendants' violations.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act
### Against All Defendants

36. Plaintiff repeats and realleges each and every allegation contained above.

37. This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all Defendants.

38. Defendants were sellers and offerors and/or solicitors of purchasers of the ADSs offered pursuant to the Prospectus.

39. The Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein. Defendants' actions of solicitation included participating in the preparation of the false and misleading Prospectus and participating in road shows to market the IPO to investors.

40. Defendants owed to the purchasers of Giant Interactive ADSs, including Plaintiff and other class members, the duty to make a reasonable and diligent investigation of the statements contained in the IPO materials, including the Prospectus contained therein, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants in the exercise of reasonable care should have known of the misstatements and omissions contained in the IPO materials as set forth above.

41. Plaintiff and other members of the Class purchased or otherwise acquired Giant Interactive ADSs pursuant to and/or traceable to the defective Prospectus. Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Prospectus.

42. Plaintiff, individually and representatively, hereby offers to tender to defendants those securities which plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon. Class members who have sold their Giant Interactive ADSs are entitled to rescissory damages.

43. By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated, §12(a)(2) of the Securities Act. Accordingly, Plaintiff and members of the

Class who hold Giant Interactive ADSs purchased in the IPO have the right to rescind and recover the consideration paid for their Giant Interactive ADSs and hereby elect to rescind and tender their Giant Interactive common stock to the defendants sued herein. Plaintiff and Class members who have sold their Giant Interactive ADSs are entitled to rescissory damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of itself and the Class, prays for judgment as follows:

A.  declaring this action to be a plaintiff class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.  awarding plaintiff and other members of the Class damages together with interest thereon;

C.  with respect to Count II, ordering that the IPO be rescinded;

D.  awarding plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

E.  awarding plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: November 26, 2007

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

_/s/ Samuel H. Rudman_
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

ABRAHAM FRUCHTER & TWERSKY LLP
JACK G. FRUCHTER
One Pennsylvania Plaza, Suite 2805
New York, NY 10119
Telephone: 212/279-5050
212/279-3655 (fax)

Attorneys for Plaintiff

## CERTIFICATION OF PYRAMID HOLDINGS, INC.
## IN SUPPORT OF CLASS ACTION COMPLAINT

Pyramid Holdings, Inc. ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized its filing.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the proposed Class Period, plaintiff bought 500 American Depositary Shares (ADS) in Giant Interactive Group, Inc.'s Initial Public Offering.

5. In the past three years, plaintiff has sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws captioned *In re OSI Pharmaceuticals, Inc. Securities Litigation*, 04-cv-5505 (E.D.N.Y. 2004).

6. Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 26th day of November, 2007.

_____
PYRAMID HOLDINGS, INC.