UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PYRAMID HOLDINGS, INC., Individually and On Behalf of All Others Similarly Situated, | : : : | Civil Actions No. 1:07-cv-10588-RWS <u>CLASS ACTION</u> |
| Plaintiff, | : : | |
| vs. | : : | |
| GIANT INTERACTIVE GROUP, INC., et al., | : : | |
| Defendants. | : : | |
| ROSIE L. BROOKS, Individually and On Behalf of All Others Similarly Situated, | : : : | Civil Actions No. 1:07-cv-11423-RWS <u>CLASS ACTION</u> |
| Plaintiff, | : : | |
| vs. | : : | |
| GIANT INTERACTIVE GROUP, INC., et al., | : : | |
| Defendants. | : | |

MEMORANDUM IN SUPPORT OF THE MOTION OF THE QUI GROUP FOR
CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF
SELECTION OF LEAD COUNSEL

## I.  PRELIMINARY STATEMENT

Presently pending before this Court are two-related securities class action lawsuits (the "Actions") brought on behalf of all persons, other than Defendants, who purchased the American Depository Shares ("ADSs") of Giant Interactive Group, Inc. ("Giant Interactive" or the "Company") pursuant and/or traceable to the Company's initial public offering on or about November 1, 2007 (the "IPO" or the "Offering").  The Actions allege violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") (15 U.S.C. §§77k, 77l(a)(2) and 77o), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Class members Dunping Qui, Yihua Li, Xie Yong, Linming Shi and Arthur Michael Gray (collectively, the "Qui Group") hereby move this Court for an Order to: (i) consolidate the Actions; (ii) appoint the Qui Group as Lead Plaintiff in the Actions under Section 27 of the Securities Act; and (iii) approve the Qui Group's selection of the law firms of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") and Abraham Fruchter & Twersky LLP ("Abraham Fruchter") to serve as Lead Counsel.

This motion is made on the grounds that the Qui Group is the most adequate plaintiff, as defined by the PSLRA.  During the Class Period, the Qui Group incurred a substantial $856,647.37 loss on its transactions in Giant Interactive ADSs.  *See* Alba Decl., Ex. B.[1]  To the best of its knowledge, this is the greatest loss sustained by any moving Class member or Class member group who has brought suit or filed an application to serve as Lead Plaintiff in these Actions.  In addition, the Qui Group, for the purposes of this Motion, adequately satisfies the requirements of Rule 23 of

---

[1] References to the "Alba Decl., Ex. ___" are to the exhibits attached to the accompanying Declaration of Mario Alba Jr., dated January 25, 2008, and submitted herewith.

the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative Class and that it will fairly and adequately represent the interests of the Class.

## II.   FACTUAL BACKGROUND[2]

Giant Interactive develops and operates online games in the People's Republic of China. The Company's primary game is ZT Online which is a free-to-play massive multi-player online ("MMO") game.

The complaint charges Giant Interactive and certain of its officers and directors with violations of the Securities Act. According to the complaint, on or about October 31, 2007, Giant Interactive filed with the Securities and Exchange Commission ("SEC") a Form F-1/A Registration Statement (the "Registration Statement"), for the IPO. On or about November 1, 2007, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, became effective and, including the exercise of the over-allotment, more than 57 million shares of Giant Interactive's ADSs at $15.50 per ADS were sold to the public, thereby raising more than $886 million. The complaint alleges that the Registration Statement and the Prospectus failed to disclose that the Company had experienced a decline in average concurrent users ("ACU") and peak concurrent users ("PCU") for the third quarter of 2007 due to a significant rule change for ZT Online.

On November 19, 2007, after the close of the market, Giant Interactive issued a press release announcing its financial results for the third quarter of 2007, the period ending September 30, 2007. Among other things, the Company reported that ACU for the third quarter was 481,000, a decrease

---

[2] These facts are drawn from the allegations in the complaint entitled *Pyramid Holdings, Inc. vs. Giant Interactive Group, Inc., et al.*, Civil Action No. 1:07-cv-10588-RWS (the "*Pyramid Holdings* Action").

of 6% from the second quarter of 2007 and that PCU for the third quarter was 888,000, a decrease of 17.2% from the second quarter of 2007. Then, on November 20, 2007, before the market opened, Giant Interactive held a conference call with analysts and investors to review the Company's earnings release. During the conference call, Giant Interactive attributed the decline in the third quarter ACU and PCU figures to a rule change to ZT Online that was implemented to discourage gold farming activity. Following the Company's earnings release and conference call, on November 20, 2007, the price of Giant Interactive ADSs dropped from $14.88 per ADS to $11.10 per ADS on extremely heavy trading volume.

### III. ARGUMENT

#### A. The Actions Should Be Consolidated For All Purposes

The Actions each assert class claims on behalf of the purchasers of Giant Interactive ADSs for alleged violations of the Securities Act during the relevant time period. The Actions name virtually the same defendants and involve the same factual and legal issues. They are each brought by investors who purchased Giant Interactive ADSs during the relevant time period in reliance on the integrity of the market for such securities and were injured by the fraud on the market that was perpetrated through the issuance of materially false and misleading statements and concealment of material information, thus artificially inflating the prices of Giant Interactive ADSs at all relevant times. Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42 (a). *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). That test is met here and, accordingly, the Actions should be consolidated.

### B. The Qui Group Should Be Appointed Lead Plaintiff

#### 1. The Procedure Required by the PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §77z-1 and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §77z-1(a)(3)(A)(i). Plaintiff in the *Pyramid Holdings* Action caused the first notice regarding the pendency of these Actions to be published on *Business Wire*, a national, business-oriented newswire service, on November 26, 2007. *See* Alba Decl., Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§77z-1(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class who the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §77z-1(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

- 4 -

15 U.S.C. §77z-1(a)(3)(B)(iii). *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. The Qui Group Satisfies the "Lead Plaintiff" Requirements of the Securities Act

#### a. The Qui Group Has Complied with the Securities Act and Should Be Appointed Lead Plaintiff

The time period in which Class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on January 25, 2008. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice on November 26, 2007, the Qui Group timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the Class.

The members of the Qui Group have duly signed and filed certifications stating that they are willing to serve as the representative parties on behalf of the Class. *See* Alba Decl., Ex. C. In addition, the Qui Group has selected and retained competent counsel to represent itself and the Class. *See* Alba Decl., Exs. D-E. Accordingly, the Qui Group has satisfied the individual requirements of 15 U.S.C. §77z-1(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and approval of selection of Lead Counsel, as set forth herein, considered and approved by the Court.

#### b. The Qui Group Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed certifications, *see* Alba Decl., Ex. C, the Qui Group incurred a substantial $856,647.37 loss on its transactions in Giant Interactive ADSs. *See* Alba Decl., Ex. B. The Qui Group thus has a significant financial interest in this case. Therefore, the Qui Group satisfies all of the PSLRA's prerequisites for

appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §77z-1(a)(3)(B).

### c.  The Qui Group Otherwise Satisfies Rule 23

According to 15 U.S.C. §77z-1(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Lax v. First Merchants Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *20, (N.D. Ill. Aug. 6, 1997). The Qui Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are

- 6 -

typical. *See Sofran v. Labranche & Co.,* 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact"). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Ferrari v. Impath, Inc.,* No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004).

The members of the Qui Group satisfy this requirement because, just like all other Class members, they: (1) purchased Giant Interactive ADSs during the Class Period; (2) were adversely affected by defendants' false and misleading Prospectus; and (3) suffered damages as a result thereof. Thus, the Qui Group's claims are typical of those of other Class members since its claims and the claims of other Class members arise out of the same course of events. Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of the Qui Group to represent the Class to the existence of any conflicts between the interest of the Qui Group and the members of the Class. The Court must evaluate adequacy of representation by considering: (i) whether the Class representatives' claims conflict with those of the Class; and (ii) whether Class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Global Crossing Sec. & ERISA Litig.*, No. 02 MD 1472 (GEL), 2004 U.S. Dist. LEXIS 23946, at *53 (S.D.N.Y. Nov. 23, 2004).

Here, the members of the Qui Group are adequate representatives of the Class. As evidenced by the injuries suffered by the Qui Group and the Class, the interests of the Qui Group are clearly aligned with the members of the Class, and there is no evidence of any antagonism between the Qui Group's interests and those of the other members of the Class. Further, the Qui Group has taken significant steps which demonstrate it will protect the interests of the Class: it has retained competent

and experienced counsel to prosecute these claims. In addition, as shown below, the Qui Group's proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, the Qui Group *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### C. The Court Should Approve the Qui Group's Choice of Counsel

Pursuant to 15 U.S.C. §77z-1(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. In that regard, the Qui Group has selected the law firms of Coughlin Stoia and Abraham Fruchter as Lead Counsel, firms which have substantial experience in the prosecution of shareholder and securities class actions. Accordingly, the Court should approve the Qui Group's selection of counsel.

## IV. CONCLUSION

For all the foregoing reasons, the Qui Group respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint the Qui Group as Lead Plaintiff in the Actions; (iii) approve its selection of Lead Counsel as set forth herein; and (iv) grant such other relief as the court may deem just and proper.

DATED: January 25, 2008

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP

  /s/ *Mario Alba Jr.*
MARIO ALBA JR.

SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

ABRAHAM FRUCHTER & TWERSKY LLP
JACK G. FRUCHTER
One Pennsylvania Plaza, Suite 2805
New York, NY 10119
Telephone: 212/279-5050
212/279-3655 (fax)

[Proposed] Lead Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, Mario Alba Jr., hereby certify that on January 25, 2008, I caused a true and correct copy of the attached:

> Notice Of Motion For Consolidation, Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel;
>
> Memorandum In Support Of The Motion Of The Qui Group For Consolidation, Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel; and
>
> Declaration Of Mario Alba Jr. In Support Of The Motion Of The Qui Group For Consolidation, Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to all additional counsel on the attached service list.

/s/ *Mario Alba Jr.*
Mario Alba Jr.

GIANT INTERACTIVE

Service List - 1/25/2008    (07-0260)

Page 1 of 1

### Counsel For Defendant(s)

Meredith N. Landy
Lori E. Romley
O'Melveny & Myers LLP
2765 Sand Hill Road
Menlo Park, CA  94025
   650/473-2600
   650/473-2601 (Fax)

Jonathan Rosenberg
O'Melveny & Myers LLP
7 Times Square
New York, NY  10036
   212/326-2000
   212/326-2061 (Fax)

Seth Aronson
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA  90067-6035
   310/553-6700
   310/246-6779 (Fax)

A. Robert Pietrzak
Andrew W. Stern
Sidley Austin LLP
787 7th Avenue, 22nd Floor
New York, NY  10019
   212/839-5300
   212/839-5599 (Fax)

### Counsel For Plaintiff(s)

Jack G. Fruchter
Abraham, Fruchter & Twersky
One Pennsylvania Plaza, Suite 2805
New York, NY  10119
   212/279-5050
   212/279-3655 (Fax)

Evan J. Smith
Brodsky & Smith, LLC
240 Mineola Blvd., 1st Floor
Mineola, NY  11501
   516/741-4977
   516/741-0626 (Fax)

Samuel H. Rudman
David A. Rosenfeld
Mario Alba, Jr.
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
   631/367-7100
   631/367-1173 (Fax)

Richard A. Maniskas
D. Seamus Kaskela
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA  19087
   610/667-7706
   610/667-7056 (Fax)