```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/5/08
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X
PYRAMID HOLDINGS, INC., Individually
And On Behalf of All Others Similarly    Civil Action No.
Situated,                                07 Civ. 10588 (RWS)

            Plaintiff,

    -against-                            CLASS ACTION

GIANT INTERACTIVE GROUP, INC.,
et al.,

            Defendants.
----------------------------------------X
ROSIE L. BROOKS, Individually And On
Behalf of All Others Similarly           Civil Action No.
Situated,                                07 Civ. 11423 (RWS)

            Plaintiff,

    -against-                            CLASS ACTION

GIANT INTERACTIVE GROUP, INC.,
et al.,

            Defendants.
----------------------------------------X

A P P E A R A N C E S:

    Attorneys for Class Members Dunping Que,
    Yihua Li, Xie Yong, Linming Shi and Arthur Michael Gray

        COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
        58 South Service Road, Suite 200
        Melville, NY  11747
        By:  Samuel H. Rudman, Esq.
             David A. Rosefeld, Esq.
             Mario Alba, Jr., Esq.

        ABRAHAM FRUCHTER & TWERSKY LLP
        One Pennsylvania Plaza, Suite 2805
        New York, NY  10119
        By:  Jack G. Fruchter, Esq.

**Sweet, D.J.**

I.   INTRODUCTION

Presently pending before the Court are two related securities class actions (the "Actions") brought on behalf of all persons other than defendants who purchased the American Depository Shares ("ADSs") of Giant Interactive Group, Inc. ("Giant Interactive" or the "Company") pursuant and/or traceable to the Company's initial public offering on or about November 1, 2007 (the "IPO" or the "Offering").  The Actions allege violations of Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Class members Dunping Qui, Yihua Li, Xie Yong, Linming Shi, and Arthur Michael Gray (collectively, the "Qui Group") have moved the Court for an Order to (i) consolidate the Actions, (ii) appoint the Qui Group as Lead Plaintiff in the Actions under Section 27 of the Securities Act, and (iii) approve the Qui Group's selection of the law firms of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") and Abraham Fruchter & Twersky LLP ("Abraham Fruchter") to serve as Lead

1

Counsel. The motion is unopposed, and was marked fully submitted on March 26, 2008.

For the reasons set forth below, the Actions are consolidated, the Qui Group is appointed Lead Plaintiff, and Coughlin Stoia and Abraham Fruchter are appointed Lead Counsel. The Court reserves the ability to alter this structure at any time and for any reason, and will do so if it finds that the progress of the litigation is being delayed, that expenses are being unnecessarily enlarged, or if the structure established proves detrimental, in any way, to the best interests of the proposed class.

## II. FACTUAL ALLEGATIONS

Giant Interactive develops and operates online games in the People's Republic of China. The Company's primary game is ZT Online, a free-to-play massive multi-player online game ("MMORPG").

According to the complaints, on or about October 31, 2007, Giant Interactive filed with the Securities and Exchange Commission ("SEC") a Form F-1/A Registration Statement (the "Registration Statement") for the IPO. On or about November 1,

2

2007, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, became effective, and, including the exercise of over-allotment, more than 65 million shares of Giant Interactive's ADSs were sold to the public at $15.50 per ADS, raising more than $1.04 billion. The complaints allege that the Registration Statement and the Prospectus failed to disclose that the Company had experienced a decline in average concurrent users ("ACU") and peak concurrent users ("PCU") for the third quarter of 2007 due to a significant rule change for ZT Online.

On November 19, 2007, after the close of the market, Giant Interactive issued a press release announcing its financial results for the third quarter of 2007, the period ending September 30, 2007. Among other things, the Company reported that ACU for the third quarter was 481,000, a decrease of 6% from the second quarter of 2007, and that PCU for the third quarter was 888,000, a decrease of 17.2% from the second quarter of 2007. On November 20, 2007, before the market opened, Giant Interactive held a conference call with analysts and investors to review the Company's earnings release. During the conference call, Giant Interactive attributed the decline in the third quarter ACU and PCU figures to a rule change to ZT

Online that was implemented to discourage "gold farming."[1] Following the Company's earnings release and conference call, on November 20, 2007, the price of Giant Interactive ADSs dropped from $14.88 to $11.10 on extremely high trading volume.

### III. THE ACTIONS ARE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not make the determination of the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions . . . ." Id.

Consolidation is appropriate where actions before the Court involve common questions of law or fact. See Fed. R. Civ. P. 42(a). These two putative class actions seek relief on behalf of the same class based on the same series of events. Both claim violations of Sections 11 and 12(a)(2) of the federal

---

[1] In MMORPG games, "gold farmer" is a general term for a player who attempts to acquire items of value within the online game by exploiting repetitive elements of the game's mechanics, either manually or by using a computer program.

4

securities laws. As such, the cases are well-suited for consolidation.

**IV.   THE QUI GROUP IS APPOINTED LEAD PLAINTIFF**

    **A.   <u>The PSLRA Procedure</u>**

The PSLRA establishes a statutory presumption that a party is the most adequate plaintiff on a showing that it:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a member of the purported class that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff

incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### B. The Qui Group is Appointed Lead Plaintiff

The Qui Group, as the only movant, is the presumptive lead plaintiff, provided that it can meet the requirements of Rule 23.

Rule 23(a) provides that one or more members of a class may sue on behalf of the class if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met. Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252 (S.D.N.Y. 2003); In re Party City Sec. Litig., 189 F.R.D. 91, 106 (D.N.J. 1999) ("A wide-ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification." (quoting

6

Fischler v. AMSouth Bancorporation, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. 1997)) (alteration in original)).

### 1. Typicality

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). However, the claims of the class representative need not be identical those of all members of the class. "[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members." Bishop v. N.Y. City Dep't of Housing Pres. & Dev., 141 F.R.D. 229, 238 (2d Cir. 1992). All members of the Qui Group purport to have purchased Giant Interactive ADSs during the class period, and there are no facts before the Court that suggest that any of them are atypical of the putative class.

### 2. Adequacy

7

The PSLRA explicitly permits a "group of persons" to serve as lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); see also In re Cendant Corp. Litig., 264 F.3d 201, 266 (3d Cir. 2001). However, the appointment of an aggregation of unrelated plaintiffs as lead counsel risks "defeat[ing] the purpose of choosing a lead plaintiff." In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157 (S.D.N.Y. 1997). "Appointing lead plaintiff on the basis of financial interest, rather than on a 'first come, first serve' basis, was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." Donnkenny, 171 F.R.D. 158; see also In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001). Thus, the Court must reject a movant "group" with the largest losses on a determination that it is "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel.'" Id. at 307-08.

A group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore

8

presumptively cohesive. See, e.g., Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (aggregation of seven shareholders did not present group so cumbersome as to deliver control of litigation into the hands of the lawyers); In re Oxford Health Plans Inc., Sec. Litig., 182 F.R.D. 42 ,46 (S.D.N.Y. 1998) ("The Court is convinced that the limited size of the [plaintiff group] coupled with the scope of each individuals' loss will make the [plaintiff group], as reduced by the Court, an effective monitor of its counsels' performance, thereby fulfilling its purpose under the PSLRA."); cf. In re Flight Safety Techs., Inc. Sec. Litig., 231 F.R.D. 124, 129 (D. Conn. 2005) (finding that appointing eight unrelated and unfamiliar plaintiffs as co-lead plaintiffs, when no preexisting relationship was evident, would be counter to both the terms and the spirit of the PLSRA). A group consisting of persons with a pre-litigation relationship is more likely to be appointed lead plaintiff, on the logic that a more cohesive group is more likely to function smoothly. See, e.g., Xianglin Shi v. Sina Corp., 05 Civ. 2154 (NRB), 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005).

The Qui Group's submissions are silent on the question of whether its members have a pre-litigation relationship. The certification of Arthur Michael Gray appears to be a form

9

certification filled out on the Coughlin Stoia website, which suggests that he, at least, did not have a prior relationship with the other members of group. See Declaration of Mario Alba Jr. in Support of the Motion of the Qui Group for Consolidation, Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel ("Alba Decl."), Ex. C.  Because the Qui Group is of a relatively small size, and given the dearth of alternatives, it is appointed Lead Plaintiff.  The Court will remain cognizant, however, of the potential for lawyer-driven litigation, particularly in light of (1) the size of the Qui Group members' alleged losses relative to those of the class, and (2) the apparent lack of prior relationship between the members of the Qui Group.

### D. Selected Counsel Are Approved

The Qui Group has selected the law firms of Coughlin Stoia and Abraham Fruchter as Lead Counsel.  These firms have substantial experience in the prosecution of shareholder and securities class actions.  Both firms are qualified to serve as lead counsel to the class.

## V. CONCLUSION

The motion for consolidation, appointment as lead plaintiff, and for approval of selection of lead counsel is granted.

It is so ordered.

New York, N.Y.
July 30, 2008

_____
ROBERT W. SWEET
U.S.D.J.