USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/2/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE GIANT INTERACTIVE GROUP, INC. SECURITIES LITIGATION

This Document Relates To:

ALL ACTIONS.

07 Civ. 10588 (PAE)

MEMORANDUM & ORDER

PAUL A. ENGELMAYER, District Judge:

Lead Plaintiffs Dunping Qui, Yihua Li, Xie Yong, Linming Shi and Arthur Michael Gray[1] move for an Order certifying a settlement class, approving the proposed settlement of the above-captioned class action and the proposed plan of allocation of the settlement proceeds pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure, as well as for attorneys' fees, expenses, and lead plaintiffs' awards. By Order dated August 2, 2011, the Court preliminarily approved the settlement, thereby allowing plaintiffs to provide notice to the class members of the settlement's impending final approval. The Court approved from the bench on October 26, 2011 the settlement agreement, the plan of allocation, and application for attorney's fees, expenses, and lead plaintiff awards. The Court's statement at the conference setting forth its reasons for approving the agreement and awards is incorporated by reference into this Order. This memorandum memorializes and elaborates on the Court's reasoning in certifying the class, approving the settlement, and granting the various applications.

[1] Except where specifically noted by the use of capitalized terms, the Court will hereinafter refer to the Lead Plaintiffs as "plaintiffs" and to Co-Lead Plaintiff's Counsel as "plaintiffs' counsel."

## I. **Background**[2]

This litigation arises from alleged misrepresentations in, and omissions from, the Registration Statement and Prospectus (the "Registration Statement") issued by defendant Giant Interactive Group, Inc.—a Chinese developer of online games—in connection with its initial public offering (the "IPO") of approximately 57 million American Depository Shares ("ADS") on November 1, 2007. The action was initiated on November 26, 2007, and was brought on behalf of a class of all persons who purchased shares pursuant or traceable to the IPO and did so between November 1, 2007 and November 19, 2007. The action asserts claims against Giant as well as against the underwriters for the IPO—UBS Investment Bank and Merrill Lynch & Co., Inc.

The essence of plaintiffs' complaint is that the Registration Statement failed to disclose material facts about the prevalence and deleterious impact of a practice known as "gold farming," which, according to plaintiffs, inflated the popularity metrics for one of Giant's games, called ZT Online. After consolidation of a number of similar complaints into this action, a Consolidated Amended Complaint ("CAC") was filed on October 6, 2008, alleging violations of Sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77l(a)(2). On November 21, 2008, Giant filed a motion to dismiss the CAC under Federal Rule of Civil Procedure 12(b)(6). The underwriter defendants also filed a motion to dismiss, adopting the

[2] The description of the facts of this case is drawn from counsel's representations to the Court in the final settlement conference of October 26, 2011; the Joint Declaration of Evan J. Kaufman and Lawrence D. Levit in Support of Lead Plaintiffs' Motion for Final Approval of the Settlement and Plan of Allocation of Settlement Proceeds, and Motion for an Award of Attorneys' Fees and Expenses and Plaintiff Awards; the Declaration (and Supplemental Declaration) of Jennifer M. Keough re: Notice Dissemination and Publication; the Declaration of Jack G. Fruchter Filed on Behalf of Abraham, Fruchter & Twersky, LLP in Support of Application for Award of Attorneys' Fees and Expenses; and the Declaration of Ellen Gusikoff Stewart Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses. Except where specifically referenced, no further citation will to these sources will be made.

arguments set forth in Giant's motion. On August 7, 2009, the Court issued an opinion denying the motion to dismiss. *See In re Giant Interactive Group, Inc. Sec. Litig.*, 643 F. Supp. 2d 562 (S.D.N.Y. 2009). All defendants filed answers to the CAC on September 23, 2009.

Discovery began in October of 2009 and continued through early 2011. In the course of discovery, the parties conducted five depositions, attended numerous meet and confer sessions regarding the production of documents, engaged in motion practice to compel production, and ultimately produced in excess of two million documents, many of them needing translation from Mandarin to English.

On March 2, 2011, the parties participated in a formal mediation session before the Honorable Layn Phillips (Ret.), former United States District Judge for the Western District of Oklahoma. In preparation for the mediation, the parties prepared and exchanged detailed mediation statements setting forth their competing views about the merits and equities of the case. After an eight-hour mediation session, followed by a number of telephonic consultations, Judge Phillips offered a mediator's proposal on March 21, 2011. That proposal was accepted by the parties on April 12, 2011. A formal settlement agreement followed after additional negotiations; the parties assented to a stipulation of settlement on July 21, 2011.

Shortly thereafter, plaintiffs filed a motion for preliminary approval of the settlement and forms of notice which, among other things, described the terms of the settlement, advised class members of their rights in relation to the settlement, set forth the proposed plan of allocation of the settlement proceeds, detailed the maximum amount of attorneys' fees and expenses that plaintiffs' counsel would request, and explained the process for filing a proof of claim and release form. The Court (per the Hon. Robert W. Sweet, United States District Judge, to whom

the case was assigned until September 30, 2011) preliminarily approved the terms of the settlement and the form of the notice by Order dated August 2, 2011.[3]

On October 5, 2011, plaintiffs moved the Court to certify a settlement class and to approve the settlement and the plan of allocation of the settlement proceeds; plaintiffs also applied for attorneys' fees and expenses, and for awards for lead plaintiffs. A final settlement conference was held before the Court on October 26, 2011, at which the Court approved the settlement and the plan of allocation of settlement proceeds, and also approved, with some modification, the application for an award of attorney's fees, expenses, and awards for lead plaintiffs. This memorandum expands upon the reasons set forth during that conference for these approvals.

## II. <u>Discussion</u>

### A. Certification of the Settlement Class

Pursuant to the Stipulation, the parties seek final certification of the class for settlement purposes pursuant to Rules 23(a) and 23(b)(3). The Class is defined for settlement purposes as:

> [A]ll Persons (other than those Persons who timely and validly requested exclusion from the Class [...]) who purchased Giant ADS pursuant and/or traceable to Giant's IPO on or about November 1, 2007, through November 19, 2007, inclusive, excluding the Defendants herein, the directors, officers, partners, subsidiaries, and affiliates of any Defendant, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y.

[3] To date, over 29,000 notices have been mailed to prospective class members. At the final settlement conference before the Court, plaintiffs' counsel represented that nearly 1,700 claims have been received, accounting (prior to review for duplication or other deficiency) for approximately 12.3–12.6 million shares representing approximately $10.8 million of the aggregate loss this settlement seeks to remedy. No party has come forward to object to either the settlement, the plan of allocation, or any application for fees, expenses, or awards.

1995). The Second Circuit has recognized that "[t]emporary settlement classes have proved to be quite useful in resolving major class action disputes." *Weinberger*, 698 F.2d at 72. For the following reasons, the Court finds the requirements for certification of a settlement class to be satisfied in this case.

### *1. Compliance With Fed. R. Civ. P. 23(a)*

The numerosity requirement of Rule 23(a) is met by virtue of the millions of Giant ADS which were in circulation and held by thousands of geographically dispersed beneficial owners during the class period. Joinder of these disparate parties would be impracticable. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 582 (S.D.N.Y. 2008).

As for commonality and typicality, the Court observes that plaintiffs' claims share a common question of law or of fact with the proposed class; additionally, each class member's claim arises from the same course of events and each class member must make similar legal arguments to prove the defendants' liability. *See Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (discussing commonality); *see also Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 104 (S.D.N.Y. 1999) (discussing typicality).

The adequacy requirement of Rule 23(a)(4) involves an inquiry as to whether: (1) the plaintiff's interests are antagonistic to the interests of the other members of the Class; and (2) plaintiff's counsel are qualified, experienced, and capable of conducting the litigation. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). In this case, the answers to these two questions are no and yes, respectively. These answers are confirmed by the lack of any opposition to this settlement (and the very small number of opt-outs), as well as the

above-average recovery in this case, measured as a percentage of maximum potential recovery, discussed further *infra*.

### 2. *Compliance With Fed. R. Civ. P. 23(b)(3)*

In addition to the four requirements of Rule 23(a), a class must also satisfy one of the three subparts of Rule 23(b). Plaintiffs seek class certification under Rule 23(b)(3), which requires that:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). This rule is designed to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). Because the issue of liability in this case is common to all members of the Class—*i.e.*, whether the share-price drop in Giant ADS was caused by the correction of material omissions or misstatements in the Registration Statement—the predominance requirement of Rule 23(b)(3) is satisfied. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud … .")

Rule 23(b)(3) also requires that the class action be "superior to other available methods for fair and efficient adjudication of the litigation." Courts have found that the superiority requirement is satisfied where:

> The potential class members are both significant in number and geographically dispersed. The interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions.

*Cromer*, 205 F.R.D. at 133. Here, the utility of presenting the claims asserted through the class action method is substantial since the class members who have been injured number in the thousands, but most have not been damaged to a degree that would induce them to institute litigation on their own behalf. *See Blech*, 187 F.R.D. at 107 ("[V]iolations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible."); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 279 (S.D.N.Y. 1999). Moreover, the holders of Giant ADS appear to be spread across the United States, Canada, and mainland China, further increasing the barriers to litigation of individual claims. Finally, certification of a class for settlement purposes will enable plaintiffs' counsel to handle the administration of the Settlement in an organized and efficient manner. The Court therefore concludes that resolution of plaintiffs' claims against defendants through the proposed Class is superior to any other available method of resolution.

For the foregoing reasons, it is ORDERED that the class is CERTIFIED for settlement purposes.

**B. Approval of the Settlement**

Pursuant to Fed. R. Civ. P. 23(e), this Court must approve any settlement of a class action such as the one at bar. "Settlement approval is within the Court's discretion, which 'should be exercised in light of the general judicial policy favoring settlement.'" *Sumitomo*, 189 F.R.D. at 280 (citation omitted); *accord Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 361 (S.D.N.Y. 2002). However, the Court may approve a settlement only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel V. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In undertaking this evaluation, a Court must consider "both

the settlement's terms and the negotiating process leading to settlement," that is, it must review the settlement for both procedural and substantive fairness. *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

1. ***Procedural Fairness***

An initial presumption of fairness may attach to a proposed settlement when the terms of that settlement were reached by experienced counsel during arm's-length negotiations undertaken after meaningful discovery. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *11 (S.D.N.Y. July 27, 2007); *see also In re Alloy, Inc., Sec. Litig.*, 2004 U.S. Dist LEXIS 24129, at *5 (S.D.N.Y. Dec. 3, 2004) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). Here, the Court concludes that this settlement is entitled to the presumption of fairness because (a) all parties in this action are represented by estimable counsel experienced in litigating these types of claims; (b) counsel have provided the Court significant evidence demonstrating that this settlement was the product of prolonged, arms-length negotiation, including as facilitated by a respected mediator; and (c) this case proceeded well into both class certification and merits discovery before settlement was reached; notably, plaintiffs' counsel reviewed over 2.2 million pages of non-public documents produced by defendants and five depositions were taken, including those of all four lead plaintiffs and of the Chief Financial Officer of Giant, who served as a 30(b)(6) witness for the company. There being no evidence to rebut the presumption of procedural fairness in this case, the Court deems the settlement procedurally fair.

2. ***Substantive Fairness***

Courts in this Circuit utilize the nine-factor test of *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) when determining whether a settlement is substantively "fair,

reasonable, and adequate." *See, e.g.*, *Ouellette v. Cardenas (In re Sony Corp. Sxrd)*, 2011 U.S. App. LEXIS 19550, at *3 (2d Cir. Sept. 23, 2011) (summary order); *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009). The factors to be considered are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804. The Court considers each factor in turn.

*(a) The complexity, expense and likely duration of the litigation*

The "complexity, expense and likely duration of the litigation" are factors that the Court should consider in evaluating a proposed settlement for approval. *Grinnell*, 495 F.2d at 463; *In re Drexel Burnham Lambert Group Inc.*, 130 B.R. 910, 927 (S.D.N.Y. 1991). "In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain." *Sumitomo*, 189 F.R.D. at 281. As such, settlement is favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court." *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 318 (3d Cir. 1998). That is undoubtedly true here.

Among other things, determining liability required exploration of complex issues bearing on the accuracy and adequacy of Giant's disclosure as to the practice of "gold farming" in defendants' product games, the rules enacted to curtail gold farming, and the impact that the practice and the rules prohibiting it were having on the users of Giant's games, and thereby the

company's anticipated future profitability. Exploration of these issues would have required considerable time and expense, all obviated by settlement. In addition, defendants vigorously asserted throughout this litigation that Giant's stock price did not decline in response to the previously-omitted information regarding gold farming, but rather because of an erroneous analyst report released virtually simultaneously with that information. Resolving this issue would inevitably have entailed a "battle of the experts," which would have been costly and which would have taken significant time. Finally, even assuming a plaintiffs' verdict, obtaining a recovery would likely have been uncommonly difficult and time-consuming, as counsel have explained that this litigation could face unique delays because defendant Giant has no assets outside of China, and any judgment obtained in the United States would have been of uncertain enforceability overseas. For all of these reasons, the complexity, expense and duration of the litigation support approval of the settlement.

*(b) The reaction of the class to the settlement*

A positive reaction of the Class to the proposed Settlement is a further factor favoring its approval by the Court. *See Grinnell,* 495 F.2d at 462; *Maley,* 186 F. Supp. 2d at 362–63 ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."); *In re American Bank Note Holographies,* 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001). No class members have objected to the Settlement, and very few have opted out. The reaction of the class to date supports approval of the Settlement.

*(c) The stage of the proceedings and discovery completed*

When considering this *Grinnell* factor, "the question is whether the parties had adequate information about their claims," *In re Global Crossing Sec. and ERISA Litig,* 225 F.R.D. 436, 458 (S.D.N.Y. 2004), such that counsel "possessed a record sufficient to permit evaluation of the

merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *Maley,* 186 F. Supp. 2d at 364. The Court concludes that this case has progressed to the point where the parties were able to make an intelligent appraisal of the value of the case. This matter has proceeded through the production of more than two million pages of documents, a deposition of defendant's corporate designee, depositions of the four lead plaintiffs, a round of mediation submissions and sessions, and expert consultations on damages and causation.

*(d) The risks of establishing liability and damages, and in maintaining the class action through trial*

Although the Court considers these three risks of continuing the litigation independently, because they turn on the interrelated facts in this case, it has grouped them together for the purposes of this discussion.

Securities litigation generally involves complex issues of fact and law, and this case is not the exception to that rule. *Maley*, 186 F. Supp. 2d. at 364 (citing *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable.")). Here, plaintiffs faced the risk of failing to prove that the alleged misstatements made by defendant Giant were materially false or misleading. Giant steadfastly contested this assertion, and plaintiffs' counsel conceded that Giant's arguments may have had jury appeal. Additionally, at the final settlement conference before the Court, counsel to the underwriter defendants proffered that his clients would have pressed a due diligence defense had the case gone to trial. Moreover, the Court understands that the defendants had developed a credible defense of "negative causation," the essence of which was that the drop in Giant's stock price was caused not by disclosure of Giant's allegedly-false statements, but instead by an erroneous analyst report released contemporaneously with the allegedly-omitted information

regarding gold farming. Thus, there was a genuine possibility that plaintiffs would have failed to establish liability at trial. This risk supports the approval of a settlement ending this litigation.

Even if plaintiffs had overcome these obstacles and established liability, proof of substantial damages was not a foregone conclusion. The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions; ultimately, proving damages would come down to a "battle of the experts," and it is impossible to predict which expert and theory of damages a jury would accept. *See American Bank Note*, 127 F. Supp. 2d at 426–27 ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("damages are a matter for the jury, whose determinations can never be predicted with certainty"), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Here, as noted, defendants have identified the erroneous analyst's report as a credible alternative for the drop in Giant's share price. This was relevant not only to liability (which could not have been found had the jury accepted defendants' argument that the analyst report accounted for 100% of the share-price drop) but also to damages: Even if the jury had concluded that the analyst's report did not account for the entirety of the share-price drop, the defense would undoubtedly have vigorously argued that it accounted for a substantial part of the stock-price drop, potentially significantly if not dramatically reducing cognizable damages. Accordingly, the Court finds that the risk of proving damages similarly supports the approval of the settlement in this matter. Additionally, at the final settlement conference before the Court, the defendants noted that, had this case, gone to trial, they would have opposed class certification and would have also sought to remove some or

all of the lead plaintiffs from the case. The Court therefore finds that the risk of maintaining a class through trial supports the approval of a settlement in this case.

*(e) The ability of the defendants to withstand a greater judgment*

Plaintiffs concede it is likely that defendants could have withstood a judgment greater than $13 million, but correctly note that "where, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *23–24 (S.D.N.Y. May 1, 2008). "[A]defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Id.* at *23.

*(f) The range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation*

The adequacy of the amount achieved in settlement may not be judged "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). To the contrary, the Court need only find that the settlement falls within a "range of reasonableness." *PaineWebber*, 171 F.R.D. at 130 (citation omitted). That range must recognize "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent" in litigation. *Wal-Mart Stores*, 396 F.3d at 119.

In this case, the Court finds that the settlement amount falls comfortably within the range of the reasonable. Indeed, the $13 million recovery in this case appears to constitute approximately 16.5% of the class' maximum provable damages, in excess of the average percentage of recovery in many securities class-action lawsuits. *See In re China SungerySec. Litig.*, 2011 U.S. Dist. LEXIS 53007, at *15 (S.D.N.Y. May 13, 2011) (noting that the average

settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses). Whether or not plaintiff may have been able to prove liability and damages in that amount at trial—and, as noted above, there was a real risk that the plaintiffs would have failed to do so—the Court finds that the recovery here is reasonable in light of the possible recovery and the risks of further litigation in this case

For the foregoing reasons, it is ORDERED that the settlement is approved as fair, reasonable, and adequate.

**C. Approval of the Plan of Allocation**

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quoting *Maley*, 186 F. Supp. 2d at 367). As numerous courts have held, a plan of allocation need not be perfect. *RMED Int'l., Inc. v. Sloa''s Supermarkets, Inc.*, 2000 U.S. Dist. LEXIS 4892, 2000 WL 420548, at *2 (S.D.N.Y. Apr. 18, 2000) ("aggregate damages in securities fraud cases are generally incapable of mathematical precision") (citing *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1182 (N.D. Cal. 1993)). Instead, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *WorldCom*, 388 F. Supp. 2d at 344 (quoting *Maley*, 186 F. Supp. 2d at 367); *accord In re NASDAQ*, 2000 U.S. Dist. LEXIS 304, at *5 (S.D.N.Y. Jan. 18, 2000). Thus, "[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel." *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *32. Here, the plan of allocation has a clear rational basis, equitably treats the class members, and was devised by experienced and estimable class counsel; the Court accordingly finds it to be fair and adequate. It is therefore ORDERED that the plan of allocation is approved.

### D. Attorney's Fees

Plaintiffs' counsel has applied for an award of attorney's fees in an amount of 33% of the settlement fund, after reduction of $263,945.54 in expenses and lead plaintiffs' awards (which total $35,400).[4] The Court recognizes that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Second Circuit has authorized district courts to employ a percentage-of-the-fund method when awarding fees in common fund cases, *see Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000), although the Circuit has encouraged district courts to cross-check the percentage fee against counsel's "lodestar" amount of hourly rate multiplied by hours spent. *Id.* at 50.[5] "It bears emphasis that whether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances."[6] *Id.* at 47. When considering the reasonableness of such an award, the Court must consider the following familiar factors:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

---

[4] Plaintiffs' counsel originally applied for a fee of 33% of the settlement fund, prior to reduction for these expenses and lead plaintiffs' awards. At the October 26, 2011, the Court advised counsel of its view that a percentage-of-the-fund recovery is more appropriately applied to the settlement fund after payment of those expenses, and plaintiffs' counsel modified the fee application accordingly.

[5] In this case, the Court notes that plaintiffs' counsel have reported a lodestar of $4,856,668.50, while an award of fees in an amount of 33% of the net settlement fund amounts to less than $4,300,000. The resulting percentage award therefore represents a negative multiplier in relation to the reported lodestar.

[6] The Court notes preliminarily that there are numerous other common fund cases in this District alone where fees were awarded in the amount of 33 1/3 % of the settlement fund, slightly greater than the award plaintiffs' counsel requests here. *See, e.g., Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003); *Maley*, 186 F. Supp. 2d at 370; *Newman v. Caribiner Int'l Inc.*, No. 99 14 Civ. 2271 (S.D.N.Y. Oct. 19, 2001); *In re Net Ease.com, Inc. Sec. Litig.*, No. 01-CV-9405 (S.D.N.Y. May 30, 2003); *Meridian Inv. Club v. Delta Financial Corp.*, No. CV-99-7033 (S.D.N.Y. April 14, 2003); *Lemmer v. Golden Books Family Entm't Inc.*, 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999); *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997).

*Goldberger*, 209 F.3d at 50; *see also Mba v. World Airways, Inc.*, 369 F. App'x 194, 199 (2d Cir. 2010) (summary order); *Central States S.E. & S.W. Areas Health and Welfare Fund, et al. v. Merck-Medco Managed Care, L.L.C., et al.*, 504 F.3d 229, 249 (2d Cir. 2007). The Court weighs each factor in turn.

***1. The time and labor expended by counsel***

Plaintiffs' counsel have expended substantial time and effort pursuing this case since its inception nearly four years ago, and have represented that their respective lawyers and para-professionals have devoted 12,605 hours to this matter. As noted, the tasks completed include the review of more than two million pages of documents, conducting depositions in the U.S. and abroad, attending meet-and-confer sessions, preparing mediation submissions and attending a lengthy mediation session, and extensive settlement negotiations. In light of these efforts and the size of the settlement fund, the Court finds that this *Goldberger* factor supports the award of a 33% fee.

***2. The magnitude and complexities of the litigation***

A securities case, "by its very nature, is a complex animal." *Maley,* 186 F. Supp. 2d at 372 (quotation omitted). Such was the case here, and counsel faced the additional challenges that many documents needed translation, that evidence, witnesses and depositions were overseas, and that discovery motions were heavily contested. Moreover, had this case moved towards trial, additional motion practice would have surely prolonged this case, and counsel faced the possible challenge of enforcing a judgment in China. Given these complexities, the Court finds that this *Goldberger* factor supports the fee request in this case.

***3. The risk of the litigation***

In considering the risk of litigation as it pertains to fee awards, Courts in this circuit may consider several types of risk. The most salient is the attorneys' risk in accepting a case on a contingency fee for, as the Second Circuit has noted "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Grinnell*, 495 F.2d at 470. Here, plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for nearly four years. The Court accordingly finds that the contingency risk in this case supports the requested award. The Court further finds that the additional risks of establishing liability, proving damages, and enforcing a judgment (all discussed *supra*), further support the granting of the application for fees.

***4. The requested fee in relation to the settlement and quality of representation***

The Court finds that the quality of representation by counsel on both sides was high in this case. Additionally, as noted above, the settlement ultimately reached in this case of approximately 16.5% of the aggregate loss of the class is higher than the typical recovery in many shareholder class actions, further justifying counsel's 33% fee request. The Court also recognizes the diligence and hard work of plaintiffs' counsel in achieving such a settlement, particularly in light of the fact that this case (unlike many other securities class actions) was independently developed by plaintiffs' counsel, as opposed to following, or piggybacking on, a regulatory investigation or settlement. Consequently, the Court finds that these *Goldberger* factors supports the award of a 33% fee.

### *5. Public Policy Considerations*

Private securities litigators may serve a function as private attorneys general and are a "necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). The recognition of this role has led to the "commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51. In accordance with this sentiment, the Court finds that public policy supports the award of a 33% fee in this case, the better to "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so." *WorldCom*, 388 F. Supp. 2d at 359.

For the foregoing reasons, the application of plaintiffs' counsel for an attorneys' fee in an amount of 33% of the net settlement fund is GRANTED as fair and reasonable. As set forth below, the Court is, however, temporarily deferring approval of release to plaintiffs' counsel of half of this fee award, pending a report to the Court on the progress of the claims administration process. When and if enough class members have come forward with validated claims so that the Court can be assured that the entire settlement (net of fees, expenses and lead plaintiffs awards) will actually be paid out to the class (as opposed to the contingent charitable beneficiary that would stand to receive the balance if an insufficient number of class members came forward), the Court will approve release of the balance of this fee. The Court is imposing this condition because the touchstone of plaintiffs' counsel's entitlement to fees is the benefit actually conferred on the class. This condition will incent plaintiffs' counsel to work vigorously with the claims administrator to make sure that class members (many of whom appear to reside overseas) are located and encouraged to submit claims.

## E. Expenses for Plaintiffs' Counsel

Counsel also requests an award for expenses of $263,945.54 incurred in this action. It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class. *See, e.g.*, *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, 2004 U.S. Dist. LEXIS 8608, at *17 (S.D.N.Y. May 14, 2004) (citations omitted). "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *57 (citations omitted); *see also American Bank Note*, 127 F. Supp. 2d at 433. Here, the notice sent to class members affirmed that any expense request would not exceed $350,000, and no class member has objected to this request. Reviewing the affidavits submitted by plaintiffs' counsel, the Court finds the expense request to be reasonable.

Accordingly, the application of plaintiffs' counsel for reasonable expenses in an amount of $263.945.54 is GRANTED.

**F. Lead Plaintiff Awards**

Finally, plaintiffs' counsel has applied for awards to four lead plaintiffs. The PSLRA allows for reimbursements to representative plaintiffs in securities class actions, providing:

> "Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lose wages directly relating to the representation of the class to any representative party serving on behalf of the class."

15 U.S.C. §77z-1(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *30 (S.D.N.Y. Oct. 24, 2005); *see also In re Worldcom, Inc. ERISA Litig.*, 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. Oct. 18, 2004) (awarding $ 5,000 to each of the three named plaintiffs who were involved in the litigation, had been deposed, and had

"performed an important service to the class"). Here, the Court finds that the lead plaintiffs devoted substantial effort and time to this case, including reviewing filings, producing documents, and travelling to be deposed, making these requests for awards reasonable.

It is therefore ORDERED, that lead plaintiffs Yanhua Li, Xie Yong, and Linming Shi are awarded $10,000 each, and lead plaintiff Arthur Michael Gray is awarded $5,400.

## III. Conclusion

In summary, it is hereby ORDERED that the class is certified for settlement purposes pursuant to Fed. R. Civ. P. 23.

It is FURTHER ORDERED that the settlement and plan of allocation of the proceeds are approved as fair, reasonable, and adequate.

It is FURTHER ORDERED that the Court hereby awards attorneys' fees of 33% of the Settlement Fund after payment of expenses of $263,945.54 and $35,400 in the aggregate, plus interest on these fees at the same rate as earned on the Settlement Fund. One-half of the awarded attorneys' fees and all of the awarded expenses, and interest earned thereon, shall be paid to co-lead plaintiffs' counsel from the Settlement Fund immediately after the date this Order is executed subject to the terms, conditions and obligations of the Stipulation and in particular ¶6.1 thereof, which terms, conditions, and obligations are incorporated herein. The remaining one-half of the awarded attorneys' fees shall be paid to co-lead plaintiffs' counsel upon: (1) notification by plaintiffs' counsel to the Court that claims sufficient to exhaust the Net Settlement Fund have been received by the claims administrator and determined by the claims administrator to be valid claims by class members, which in the aggregate, are greater than the Net Settlement Fund; and (2) issuance of a court order approving issuance of these remaining fees to co-lead plaintiffs' counsel.

Said fees shall be allocated among plaintiffs' counsel by lead plaintiffs' counsel in any manner which, in their good faith judgment, reflects each counsel's contribution to the institution, prosecution and resolution of the action.

It is FURTHER ORDERED that the Court hereby awards lead plaintiffs' counsel expenses in an aggregate amount of $263,945.54, plus interest at the same rate earned on the Settlement Fund.

It is FINALLY ORDERED that the Court awards Arthur Michael Gray $5,400, Yanhua Li $10,000, Linming Shi $10,000, and Xie Yong $10,000 for their time and expenses in representing the Class, pursuant to 15 U.S.C. §77z-1(a)(4).

The Court will enter Judgment in this case forthwith.

SO ORDERED.

Paul A. Engelmayer

Paul A. Engelmayer
United States District Judge

Dated: November 2, 2011
New York, New York